## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JUAN RAYMUNDO LEMUS GUERRERO et al.,

        Plaintiffs,

v.                                      Case No. 1:05-CV-00357-DT

BRICKMAN GROUP, LLC et al.,

        Defendants.

_____/

## OPINION AND ORDER DENYING PLAINTIFFS' "MOTION TO CONDITIONALLY CERTIFY FAIR LABOR STANDARD ACT REPRESENTATIVE ACTION AND TO AUTHORIZE NOTICE TO THE CLASS," GRANTING PLAINTIFFS' "MOTION FOR CERTIFICATION OF A RULE 23 CLASS ACTION," AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' "MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT"

Pending before the court is Plaintiffs' "Motion to Conditionally Certify Fair Labor Standards Act Representative Action and to Authorize Notice to the Class," Plaintiffs' "Motion for Certification of a Rule 23 Class Action," and Defendants Brickman Group, L.L.C. and Brickman Acquisitions, LTD. d/b/a Lakewood Landscaping's (collectively "Lakewood's") "Motion to Dismiss and/or for Summary Judgment of Plaintiffs' FLSA Collective Action and State Law Claims." The court determines that no hearing is required. W.D. Mich. LR 7.1(d). For the reasons stated below, the court will (1) deny Plaintiffs' motion for FLSA certification, (2) grant Plaintiffs' motion for Rule 23 certification and (3) grant in part and deny in part Defendants' motion to dismiss.

## I.  BACKGROUND

Plaintiffs are Mexican nationals who traveled to Michigan from Mexico to perform seasonal landscaping work for Lakewood during the years 1999 through 2005. Lakewood obtained permission to import these laborers pursuant to the federal government's "H-2B" program.  In their complaint, Plaintiffs allege four causes of action: (1) violations of the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, and (2) the Working at Point Away from Home Locality Act ("WPAFHLA"), Mich. Comp. Laws § 408.581, (3) Breach of Contract and (4) Unjust Enrichment.  (*See* 2nd Am. Compl.)[1]

In their FLSA claim, Plaintiffs allege that they were required to incur several employment-related expenses in order to accept their jobs with Lakewood, including "visa fees charged by the U.S. government, recruitment fees charged by Lakewood's recruiter, transportation costs getting from Mexico to Michigan and back again, uniform costs, and housing costs."  (Pls.' Br. for FLSA Class Certification at 3; *see also* Compl. at 7-9.)  Plaintiffs allege that "these expenses operated as *de facto* deductions from Plaintiffs' wages for purposes of measuring compliance with the FLSA and that, as a result of these deductions -- which amounted to more than $500 per worker -- Lakewood's H-2B workers failed to earn the minimum wage and overtime premium mandated by the FLSA during each work week."  (Pls.' Br. for FLSA Class Certification at 3.)   Now before the court are Plaintiffs' "Motion to Conditionally Certify Fair Labor

---

[1]Plaintiffs assert that their FLSA claim relates to the years 2003 through 2005 and their last three causes of action relate to the years 1999 through 2005.  (*See* Pls.' Br. for FLSA Class Certification at 2.)

2

Standards Act Representative Action and to Authorize Notice to the Class," Plaintiffs'

"Motion for Certification of a Rule 23 Class Action," and Defendants' "Motion to Dismiss

and/or for Summary Judgment."

## II. DISCUSSION

### A. Plaintiffs' Motion for FLSA Class Certification

Section 216(b) of the FLSA provides that a person may maintain an action on

"behalf of himself . . . and other employees similarly situated.  No employee shall be a

party plaintiff to any such action unless he gives his consent in writing to become such a

party and such consent is filed in the court in which such action is brought."  29 U.S.C. §

216(b).  In other words, in order to proceed as a "collective action" pursuant to § 216(b),

Plaintiffs must demonstrate that they are "similarly situated" to the employees they seek

to notify of this suit.  The FLSA provides for a two-year statute of limitations "except that

a cause of action arising out of a willful violation may be commenced within three years

after the cause of action accrued."  29 U.S.C. §255(a).  In order for the named Plaintiffs

to represent the interests of "similarly situated" employees, these "similarly situated"

employees must "opt in" to the proceedings.  *See Clougherty v. James Vernor Co.*, 187

F.2d 288, 290 (6th Cir. 1951) ("[U]nder the Fair Labor Standards Act the plaintiff has no

right without specific authorization to represent an employee not joined as a plaintiff.").

In order to determine whether a plaintiff's motion for class certification should be

granted, the court adopts the "two-stage class certification method." *Olivo v. GMAC*

*Mortg. Corp.*, 374 F.Supp. 2d 545, 547 (E.D. Mich. 2004).  "Under the first step of the

two-stage method, the [c]ourt determines whether Plaintiffs have demonstrated other

'similarly situated' putative plaintiffs for 'notice' purposes."  *Id.* at 547-48.

3

> "If Plaintiffs are able to make this showing, the [c]ourt will authorize Plaintiffs to proceed with th[e] action as a 'collective action' and will allow Plaintiffs to notify putative class members of the pendency of this suit. This initial authorization has been called a 'conditional certification[,]' a certification conditioned upon Plaintiffs being able to satisfy the second step of the two-stage approach."

*Id.* at 548. "[U]nder the second step, following the close of discovery, defendants have the opportunity to file a motion challenging the initial determination to allow the case to proceed as a 'collective action,' and the [c]ourt applies a stricter standard to determine whether the putative class of plaintiffs are 'similarly situated' to the named Plaintiffs." *Id.* at 548, n.2. Because the court will determine that Plaintiffs are not similarly situated parties, review under the second step is unnecessary.

### 1.  Plaintiffs Do Not Meet the "Similarly Situated" Requirement

The first step in evaluating a motion to certify a FLSA collective action focuses on whether there are similarly situated putative plaintiffs for notice purposes. "With this step, [a] named plaintiff can show that the potential claimants are similarly situated 'by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Olivo,* 374 F. Supp. 2d at 548 (internal citations omitted). Although the initial standard is "fairly lenient," Plaintiffs must "'submit evidence establishing at least a colorable basis for their claim that a class of 'similarly situated' plaintiffs exists.'" *Id.* (citation omitted). "Courts requiring a factual showing under the first step . . . have considered 'factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; . . . whether evidence of a widespread discriminatory plan was submitted; and whether as a matter of sound case management; . . . a manageable class exists."

4

*Id.* (citations omitted.)  If this standard is met, "the [c]ourt will authorize Plaintiffs to proceed with [the] action as a 'collective action' and will allow Plaintiffs to notify putative class members of the pendency of the suit."  *Id.*

Plaintiffs argue that they and the class they seek to represent are similarly situated "because they are all subject to Brickman's policy decision not to pay for, or reimburse, the various visa, recruitment, travel, uniform and rent expenses associated with accepting H-2B employment with Defendant."  (Pls.' Mot. for FLSA Class Certification at 12.)  Plaintiff argues that "because all of the class members incurred these expenses for exactly the same reasons, the central legal question presented by this FLSA action -- whether the expenses were 'primarily for the benefit and convenience' of the employer or the employee -- is also common to each of the class members."  (*Id.* at 13.)

Defendants argue, on the other hand, that "Plaintiffs . . . have failed to provide sufficient factual evidence, by affidavit, or otherwise, to demonstrate that they have personally incurred recruitment fees, travel costs, accommodation costs, and visa fees as a result of their employment with Lakewood."  (*Id.* at 9.)  Defendants point out that Plaintiffs have "not submitted any evidence of a widespread discriminatory plan."  (*Id.*)  Essentially, Defendants argue that Plaintiffs have not provided sufficient evidence to be certified as a class action.  Defendants provide factual indicators of Plaintiffs' dissimilarity.

Defendants argue that Plaintiffs are not similarly situated because the "seven named Plaintiffs were paid at hourly rates varying from $6.85 per hour to $12.00 per hour."  (McGinness Aff. at ¶ 4.)  Defendants also assert that Plaintiff Artermio

5

Coria-Castro was a supervisor, while the other named representative Plaintiffs were general laborers.  (*Id.* at ¶ 5.)  Defendants further contend that "Lakewood's supervisors and general laborers have different job duties, compensation rates, and employment benefits."  (*Id.*)  Defendants also allege that each of the named Plaintiffs worked only at the Benton Harbor/St. Joseph location, which employed approximately 15 H-2B workers in 2003, as compared to the other branch locations in Livonia and Troy, which employed approximately 108 H-2B workers in 2003 and approximately 369 H-2B workers in the 2004 and 2005 seasons.  (*Id.* at ¶ 6.)  Defendants aver that, by working on at the Benton Harbor/St. Joseph location, "the named representative Plaintiffs . . . had different supervisors . . . and were subject to varying work requirements."  (*Id.* at ¶ 7.)

Defendants also assert that "Plaintiffs worked for Lakewood at varying times. Two of the named representative Plaintiffs commenced work for Lakewood in 2002, while the other five Plaintiffs did not commence their employment until 2003."  (*Id.* at ¶ 8.)  Defendants argue that "Plaintiffs did not work in 2004 or 2005 - the years that most of the workers they seek to represent were employed."  (Defs.' Resp. at 11; McGinness Aff. at ¶ 8.)  Defendants also assert that "[s]ome of the named representative Plaintiffs were provided a uniform by Lakewood without any expense to the individual employee." (McGinness Aff. at ¶ 9.)

The court is persuaded that Plaintiffs are not similarly situated.  Although each of the named Plaintiffs worked for Lakewood as an H-2B worker (*see* McGinness Dep. at ¶4), Plaintiffs have presented only Personnel Action Forms, Earnings Statements, and Applications for Alien Employment Certification concerning Plaintiffs.  (Pls.' Mot. for FLSA Class Certification at Exs. 5-13,15, 20, and 22.)  This evidence is insufficient.

The court has "a responsibility to assure that there is some factual basis for plaintiffs'
claims of class-wide discrimination before judicial approval of the sending of notice is
granted."  *See Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn.
1991).  Although it is not binding authority, the court observes that the *Severtson* court
also held that "[a] factual showing [wa]s particularly appropriate in th[e] case given that
defendants have challenged the allegations of the complaint by submitting affidavits and
deposition testimony tending to show that no widespread practice of discrimination
exists at the defendant companies."  *Id.*  Although a "modest factual showing" may be
"sufficient to demonstrate that [the named plaintiffs] and the potential plaintiffs together
were victims of a common policy or plan that violated the law," *Olivo*, 374 F. Supp. 2d at
548, Plaintiffs here have submitted not even that modest showing of evidence to be
certified as a class.  Defendants by contrast, have presented substantial evidence that
Plaintiffs are not similarly situated.  The court finds that Plaintiffs are not simiarly
situated, and will therefore deny Plaintiffs' Motion for FLSA class certification.

7

**2. Statute of Limitations**

Defendants also raise the timeliness of Plaintiffs' proposed collective FLSA representative action.  The FLSA provides a two-tiered statute of limitations, imposing a two-year statute of limitations for "ordinary" violations and a three-year statute of limitations for "willful" violations.[2]  29 U.S.C. § 255(a).  Plaintiffs allege that "Defendants' failure to pay wage[s] in compliance with the Fair Labor Standards Act was willful."[3] (2nd Am. Compl. at ¶ 46.)  Defendants assert that any alleged violations were not willful.[4]  (Defs.' Br. at 13.)

Because the court has already denied FLSA class certification, the timeliness issue is moot, and even if the longer three-year period applied, Plaintiffs would not be similarly situated for purposes of the FLSA.  The court therefore need not at this juncture reach the thorny questions involved with Defendants' alleged willful violations of the FLSA, which implicates other questions, e.g., the state of the Sixth Circuit law at the

---

[2]If the two-year ordinary limitations period applies in this case, Plaintiffs would be procedurally precluded from class certification.  However, if the three-year willful limitations period applies, Plaintiffs would fall within the limitations period.

[3]Defendants allege that "Plaintiffs Complaint falls far short of pleading any other facts that would met the willful standard."  (Defs.' Br. at 14.)  The court cannot agree. Plaintiffs did adequately plead willfulness in their complaint.  (Am. Compl. at ¶ 46.)  *See* Fed. R. Civ. P. 8(a)(2) (providing that a complaint need include only "a short plain statement of the claim"); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (emphasizing the simple pleading standard, and stating that it "applies to all civil actions, without exceptions"); *DaMassia v. Duane Reade, Inc.*, 2005 WL 1214337 (S.D.N.Y. 2005) (applying *Swierkiewicz* to a pleading of wilfulness under the FLSA). The court expresses no view concerning whether the record, for purposes of Rule 56, contains sufficient *evidence* of willfulness.

[4]An employer willfully violates the FLSA when it "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

time and whether such determination is premature if made ahead of discovery aimed at Defendants' knowledge and behavior.

The court, however, is mindful that the statute of limitations may bar some or all of the individual FLSA claims.  Because the parties have not fully briefed the issue,[5] the court will not decide it, although it may yet have to decide the wilfulness issue in the context of applying the statute of limitations to the individual claims.

For certification of a class for the state claims, the court does not believe that its analysis below is affected in any appreciable way upon the timeliness of the individual FLSA claims.  Defendants concede that at least three individually named Plaintiffs have individual FLSA claims.  (Defs.' Reply Br. at 2 n.1)  As explained below, because Rule 23 requires a minimum of only one named representative to bring a class action, the door is open in this federal forum to a state class action if the relevant requirements are met and if at least one named Plaintiff has a viable federal claim, as Defendants have already conceded.

**B. The Court Has Subject Matter Jurisdiction over Plaintiffs' State Claims**

Before turning to Plaintiffs' motion for certification of a class for the state claims, the court must first determine that it has subject matter jurisdiction over those claims.  It is axiomatic that federal courts are courts of limited jurisdiction must have subject matter jurisdiction over the claims to hear a case.  As discussed, this suit is not appropriate for

---

[5]Defendants raise the issue in passing in a footnote of their reply brief, to which Plaintiffs had no opportunity to reply.  (Defs.' Reply Br. at 2 n.1.)

certification as an FLSA collective action.[6]  To permit class certification pursuant to Rule 23, the court must ensure that it has subject matter jurisdiction over the claims of each individual plaintiff, including those members of the proposed class.

The basic statutory grants of subject matter jurisdiction for federal courts are contained in 28 U.S.C. § 1331, which provides for "federal question" jurisdiction, and 28 U.S.C. § 1332, which provides for "diversity of citizenship" jurisdiction.  A plaintiff properly invokes subject matter jurisdiction when he pleads a claim "arising under" the Federal Constitution or laws.  28 U.S.C. § 1331; *see Arbaugh v. Y & H Corp.*, 546 U.S. 500 (2006).  This case presents, apart from federal claims arising under FLSA (which in turn creates supplemental jurisdiction over the claims not arising under federal law), state claims that independently invoke the court's diversity jurisdiction, as the parties are citizens of different states.  As explained below, Plaintiffs' state claims also meet the amount in controversy requirement.

In their Second Amended Complaint, Plaintiffs pray for relief equal to the amount of unpaid minimum wages and an equal amount as liquidated damages, attorneys' fees and interest.  (Second Am. Compl. at 13.)  The unpaid minimum wages are alleged to have "amounted to more than $500 per worker."  (Pls.' Br. for FLSA Class Certification at 3.)  Individually, this amount does not satisfy the jurisdictional requirement.  However, courts have supplemental jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or

---

[6]Although the court has not decided the timeliness of each named Plaintiff's individual FLSA claims, Defendant concedes that at least three named Plaintiffs (Miranda, Roque and Avila) are "not barred."  (Defs.' Reply Br. at 2 n.1.)

controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).
The Sixth Circuit has held that 28 U.S.C. § 1367(a) overruled previous case law, such
as *Zahn v. Int'l Paper Co.*, 414 U.S. 291 (1973), which stated that class members may
not aggregate their damages to achieve the requisite amount in controversy.  *See*
*Olden v. LaFarge Corp.*, 383 F.3d 495, 507 (6th Cir. 2004) (stating "we hold today that
*Zahn* has been overruled.  Therefore, the class may aggregate damages and subject
matter jurisdiction is proper.").  Plaintiffs here are permitted to aggregate their class
damages to achieve supplemental jurisdiction for their state law claims.

Plaintiffs indicate a class size exceeding nine hundred individuals and seek relief
in the form of at least $500 per plaintiff for lost wages pursuant to the state breach of
contract claim.  If each member of the smallest expected class size collected the
minimum amount requested, with no additional damages or costs and fees, the amount
in controversy is $450,000, easily exceeding the $75,000 requirement of the diversity
jurisdiction statute.  Therefore, because the proposed class of Plaintiffs' claims do arise
from the same case and controversy, and because the aggregated amount in
controversy exceeds $75,000, the court has supplemental jurisdiction pursuant to 28
U.S.C. § 1367.  Because Plaintiffs have satisfied both requirements pursuant to Rule
23, and because the court has subject matter jurisdiction over at least three of the
individual Plaintiffs' claims, the court will grant Plaintiffs' Motion for Certification of a
Rule 23 Class Action.

### C.  Plaintiffs' Motion for Class Certification Pursuant to Rule 23

Plaintiffs filed a motion to certify their state law claims (counts II, III, and IV) as a

class action pursuant to Federal Rule of Civil Procedure 23.  (Pls.' Mot. for Rule 23

Certification at 2.)  District courts must conduct a "rigorous analysis" into whether Rule

23 has been satisfied before certifying a class.  *Gen. Tel. Co. of the Southwest v.*

*Falcon*, 457 U.S. 147, 161 (1982).  A class action may be maintained only if the

proposed class satisfied all four prerequisites of Rule 23(a) and at least one of the

requirements of Rule 23(b).  *AmChem Prod. v. Windsor*, 521 U.S. 591, 614 (1997).  The

party seeking class certification bears the burden of establishing that the requirements

of Rule 23 have been met.  *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir.

1996).  Though courts do have broad discretion in deciding if certification is proper, that

discretion must be exercised within the framework of Rule 23.  *Id.*

### 1.  Rule 23(a) Prerequisites

Pursuant to Rule 23(a), one or more members of a class may sue as

representatives parties on behalf of the entire class only if:

> (1) the class is so numerous that joinder of all members is impracticable,
> (2) there are questions of law or fact common to the class, (3) the claims
> or defenses of the representative parties are typical of the claims or
> defenses of the class, and (4) the representative parties will fairly and
> adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Courts generally refer to these as the (1) numerosity, (2)

commonality, (3) typicality and (4) adequacy of representation requirements.  *See In re*

*Am. Med. Systems*, 75 F.3d at 1079.

### a. Numerosity

There is no definite standard or number as to what size class satisfies the numerosity requirement. *See Roman v. Korson*, 152 F.R.D. 101, 105 (W.D. Mich. 1993). Some courts have accepted as few as 18 to 25 members for certification, *id.*, although the modern trend is to require a minimum of around 40 members. *Rodriguez by Rodriguez v. Berrybrook Farms, Inc.*, 672 F. Supp. 1009, 1013 (W.D. Mich. 1987) (citing *Moore's Federal Practice*, ¶ 23.05[1], at 23-151; 13-155 (2d Ed. 1985) (citing modern trend and noting number under 21 is usually insufficient, between 21 and 40 given mixed response and where numbers are over 40 and in excess of 100 always satisfactory)). In this case, Defendants applied for and received H-2B Alien Certification for 1,157 workers, and Plaintiffs estimate the proposed class consists of more than nine hundred members. (Pls.' Mot. for Rule 23 Class Certification at 4.) Additionally, Plaintiffs argue that the class members are geographically dispersed and lack sophistication. (*Id.* (citing *Rodriguez*, 672 F. Supp. at 1014 (stating that a lack of sophistication of non-English speaking migrant workers scattered through a number of states made joinder impracticable))). In a case such as this, where Plaintiff proposes almost one thousand class members, and additional factors make joinder impracticable, the numerosity prerequisite is met.

### b. Commonality and Typicality

The Supreme Court has recognized that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiffs' claims and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Falcon*, 457 U.S. at 157, n.13.  While consideration of these requirements does overlap, the court notes that commonality refers traditionally to the group characteristics as a whole, while typicality refers to the individual characteristics of the named plaintiffs as they relate to the entire class.  *See Prado-Steiman v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000).  General factors relevant to commonality and typicality include: (1) the nature of the employment practices charged, (2) the uniformity or diversity of the employer's employment practices, (3) the uniformity or diversity of the class membership and (4) the nature of the employer's management organization.  *See Stastny v. S. Bell Tel. & Tel. Co.*, 628 F.2d 267, 273-74 (4th Cir. 1980).

Plaintiffs argue that the "named plaintiffs meet the typicality requirement because they assert precisely the same claims as the members or the class."  (Pls.' Mot. for Rule 23 Class Certification at 5.)  In response, Defendants assert that "Plaintiffs have no claim for 1999-2001, nor 2004-2005 with respect to its H-2B practices, as the named Plaintiffs were not employees of Lakewood at these times."  (Defs.' Resp. at 17.)  Plaintiffs' state law claims, however, relate to the years 1999 *through* 2005.  (*See* 2nd Am. Compl.)  Moreover, Plaintiffs argue that the Application for Alien Certification

14

included a certification that "the job opportunity's terms, conditions and occupational environment are not in contrary [sic] to Federal, State or Local Law." (*See id.* at ¶ 27.) It appears to the court that if Plaintiffs establish that this Certification includes an agreement to comply with the FLSA, the agreement would be enforceable as to the years 1999-2005.  Further, the costs associated with travel from Mexico to Michigan are common to all members of the proposed class regardless of which specific years the workers had to travel.  The named Plaintiffs can thus stand in the shoes of workers who incurred the same costs and suffered the same alleged harm between 1999 and 2005. The court determines that Plaintiffs have met the requirements of commonality and typicality.

### c.  Adequacy of Representation

The inquiry into the named plaintiffs' adequacy of representation focuses on two factors: the qualifications, experience and conduct of plaintiff's counsel and their interest, and involvement of the named plaintiffs in the litigation.  *See Roman*, 152 F.R.D. at 106 (citation omitted).  The interest of the named plaintiffs must not be antagonistic to those of the class members.  *See Smith v. Babcock*, 19 F.3d 257, 265 n. 13 (6th Cir. 1994).  However, courts require that a conflict between the representative and the class must be a "fundamental one, going to the specific issues in controversy." *See Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000).

Plaintiffs in this case are not seeking injunctive relief of a limited nature, such as reinstatement of their employment positions.  Instead, Plaintiffs seek monetary damages.  There are no antagonistic interests with regard to the relief sought.

15

Additionally, the court has no reason to doubt the capability of the named Plaintiffs'
counsel; to the contrary, the court finds that Plaintiffs' counsel has made a concise
presentation of relevant legal issues and standards, and counsel has experience
litigating this type of action.  (See Pls.' Mot. for Rule 23 Class Certification at 6.)  The
court finds there is no indication that the named Plaintiffs would not vigorously
prosecute the case effectively through their counsel.[7]

## 2.  The Rule 23(b) Conditions

In addition to meeting each of the standards required by Rule 23(a), Plaintiffs
must also satisfy one of the conditions under Rule 23(b).  Fed. R. Civ. P. 23(b).
Plaintiffs in this case attempt to satisfy Rule 23(b)(3).  Certification under Rule 23(b)(3)
is appropriate when:

> the court finds that the question of law or fact common to the members of
> the class predominate over any questions affecting only individual
> members, and that a class action is superior to other available methods
> for the fair and efficient adjudication of the controversy.  The matters
> pertinent to the finding include: (A) the interest of members of the class in
> individually controlling the prosecution or defense of separate actions; (B)

---

[7]In their reply brief, Defendants insinuate a lack of communication between
Plaintiffs and their counsel, pointing to an incorrect residence listing for one named
Plaintiff and a supposed refusal to produce named Plaintiffs residing in the United
States for depositions.  Defendants suggest that Plaintiffs' claim is "lawyer driven" and
that the Plaintiffs are uninterested and uninvolved in the present case.  (Defs.' Resp. at
20.)  The court finds no basis at this time to accept these broad allegations.
Additionally, Defendants hint that Plaintiffs have little or no "understanding of the
complaint and proceedings," and are therefore not "sufficiently interested in the case to
ensure its vigorous prosecution."  (*Id.* at 19.)  It is common, however, for one's counsel
to have a deeper understanding of the complaint and court proceedings, especially
when the party himself is relatively unschooled in the American legal system (as are,
sadly, many litigants who are native-born and locally-educated Americans).  Plaintiffs
are not inadequate for purposes of class action certification simply because they lack
detailed understanding of practice and procedure in U.S. federal courts.

16

the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.* Plaintiffs provide numerous examples of the ways that questions of law and fact are common to the claim of each member of the proposed class. (*See* Pls.' Mot. for Rule 23 Class Certification at 7-11.)  Defendants do not dispute this point. (Defs.' Resp. at 21.)  Plaintiffs further state that "no individual claims, or unique . . . claims are asserted." (Pls.' Mot. for Rule 23 Class Certification at 9.)   Defendants again do not contest this point. (Defs.' Resp. at 21.)  The court concludes that there are common questions, and that these questions predominate over any individual questions that may be presented.

The court must also consider whether the Rule 23 class is superior to other available methods of adjudication.  In considering this question, courts generally ask if this is a situation where there exists "negative value suits," considering the remedies available and the costs of trial.  *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 420 (5th Cir. 1998).  In addition, the court considers the four factors provided in Rule 23(b)(3) as stated above.  In the instant case, the court finds that there is a relatively small amount in controversy per plaintiff, and that it would be inordinately expensive to conduct individual trials pursuing such releif. Therefore, the court finds that Plaintiffs have met the requirements of Rule 23(a) and Rule 23(b).

### D. Defendant's Motion to Dismiss and/or for Summary Judgment on Plaintiffs' FLSA Collective Action and State Law Claims

### 1. Unjust Enrichment

Plaintiffs have stated a claim for unjust enrichment pursuant to Michigan law. Defendants argue that this claim should be dismissed for failure to state a claim. (Defs.' Mot. to Dismiss at 16.) First, Defendant argues that unjust enrichment is a claim based on implied contract, and that this claim directly contradicts another count of Plaintiffs' complaint which alleges that there was an express contract based on various writings. (*Id.* at 16-17.) Defendants cite to no authority to support their proposition, however, that one claim can be construed as an admission against another inconsistent claim. Instead, Rule 8(e)(2) of the Federal Rules of Civil Procedure makes it quite clear that inconsistency is acceptable in pleadings, since "[a] party may also state as many separate claims or defenses as the party has regardless of consistency." Fed. R. Civ. P. 8(e)(2). Courts have been unwilling to support a position advocated for by Defendants because "a policy which permits one claim to be invoked as an admission against an alternative or inconsistent claim would significantly restrict, if not eliminate, the freedom to plead inconsistent claims provided by Rule 8(e)(2)." *Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985). *See also Rodriguez-Suris v. Montesinos*, 123 F.3d 10, 20-21 (1st Cir. 1997); *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95-96 (2d Cir. 1994); *Indep. Enterp. v. Lozecki*, 103 F.3d 1165, 1175-76 (3d Cir. 1997); *Babcock v. Wilcox Co. v. Parsons Corp.*, 430 F.2d 531, 536 (8th Cir. 1970). Nor have Defendants argued that Michigan state law forbids inconsistent pleading.

Accordingly, the court rejects Defendants' argument.

Defendants also argue that Plaintiffs' claim for unjust enrichment must be dismissed as duplicative of Plaintiffs' FLSA claims. (*Id.* at 17.) The court disagrees, and notes that Defendants mischaracterize the holdings in the cases related to FLSA and unjust enrichment claims being brought in the same action. It is true that the Eastern District of Louisiana dismissed a plaintiff's unjust enrichment claim in *Basco v. Wal-Mart Stores, Inc.*, No. 00-3184, 2003 WL 21219026 (E.D. La. May 20, 2003). However, the court did so not because it was duplicative of a FLSA claim, but rather because "the nonexistence of any other remedy at law" is a necessary element of a successful claim for unjust enrichment under Louisiana law. *Id.* at 2. This is not the case under Michigan law, where it is well established that for an unjust enrichment claim, a "plaintiff must establish only (1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp. v. City of Detroit*, 666 N.W.2d. 271 (Mich. Ct. App. 2003) (citing *Barber v. SMH (US), Inc.*, 509 N.W.2d 791 (Mich. Ct. App. 1993)). The nonexistence of any other remedy at law, a necessary element in Louisiana, is not required for success of a claim under Michigan law.

Defendants also cite *Hammond v. Lowe's Home Centers, Inc.*, 316 F.Supp.2d 975 (D. Kan. 2004), where the court stated that, "as a general proposition, state law claims that merely seek to enforce the defined remedies of the FLSA are preempted." *Id.* at 979. This statement, however, derives from *Connor v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1399 (10th Cir. 1997), the authority of which is drawn from *Masters v. Daniel*

*Int'l Corp.*, 917 F.2d 455, 457 (10th Cir. 1990), which explicitly discusses preemption of common law claims by federal statutes, but limited to how the Kansas Supreme Court would decide an issue.  This series of cases is not applicable to a claim under the state law of Michigan.

The final case Defendants cite, *Sorensen v. CHT Corp.*, Nos. 03-1609 and 03-7362, 2004 WL 442638 (N.D. Ill. March 10, 2004), refers almost exclusively to cases in which the common law claims consisted of exactly the same claims brought under FLSA, such as "'negligent failure to pay overtime.'"  *Id.* at *16-17 (citing *Nettles v. Techplan Corp.*, 704 F. Supp. 95, 100 (D.S.C. 1988)).  This is not the case with Plaintiffs' claims.  The *Sorensen* court further cites *Johnston v. Davis Sec., Inc.*, 217 F. Supp. 2d 1224, 1227-28 (D. Utah 2002) as authority for dismissing claims that are duplicative.  *Sorensen*, 2004 WL 442628 at *7. However, *Johnston* relies on *Connor*, 121 F.3d at 1399, which considered only Kansas law.  *Johnston*, 217 F.Supp. 2d at 1227-28.  Again, this case provides no assistance or guidance in interpreting the laws of the state of Michigan.

Defendants refer to no Michigan or Sixth Circuit case law stating that the Michigan common law claim of unjust enrichment is preempted by FLSA.  The cases referred to by Defendant apply only to the states in which the cases were decided.  The court will thus deny Defendant's motion to dismiss Plaintiff's claim for unjust enrichment.

## 2.  The WPAFHLA and Breach of Contract Claims

Plaintiff has alleged claims pursuant to Michigan law for violation of the WPAFHLA and breach of contract.  The court has supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367(a) based upon the original jurisdiction of Plaintiffs' federal question arising under the FLSA.  Defendant argues that because Plaintiffs' FLSA action was time-barred, the court should dismiss Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367(c)(3).  Defendant cites authority stating that "if the federal claims are dismissed before trial . . . the state claims should be dismissed as well."  *Taylor v. First of America-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992).  The court will not dismiss Plaintiffs' remaining state law actions on this ground as the court has not dismissed Plaintiffs' FLSA claims entirely.  Instead, the court will only deny Plaintiffs' Motion for class certification and the addition of more unnamed Plaintiffs pursuant to that statute.  Defendant has not requested that the court dismiss Plaintiffs' individual FLSA claims, only that the court dismiss Plaintiffs' FLSA Collective Action.  Because the court has not dismissed all individual FLSA claims, supplemental jurisdiction remains over the additional state law claims.

## III.  CONCLUSION

IT IS ORDERED that Plaintiffs' "Motion to Certify FLSA Representative Action" [Dkt. #44] is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' "Motion for Certification of a Rule 23 Class Action" [Dkt. #46] is GRANTED.  The court will issue a separate order defining the class.

IT IS FURTHER ORDERED that Defendants' "Motion to Dismiss and/or for

Summary Judgment of Plaintiffs' FLSA Collective Action and State Law Claims" [Dkt.

#71] is GRANTED with respect to Plaintiffs' FLSA Collective Action and DENIED with

respect to Plaintiffs' State law claims.

      S/Robert H. Cleland               
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  March 26, 2007

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 26, 2007, by electronic and/or ordinary mail.

      S/Lisa Wagner                  
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2
ORDERS\05-00357.GUERRERO.DenyingFLSAClassCertGrantingStateClassCertGrantingandDenyingSJ.2.wpd

22